IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAURICE WHITE,

             Plaintiff,

    v.

VEECO PROCESS EQUIPMENT INC., and
SOLOMON PAGE TEMPORARY
STAFFING AGENCY,

             Defendant.

Case No. 2:25-cv-06403

**DEFENDANT VEECO PROCESS EQUIPMENT INC.'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

326117351v.2

Defendant Veeco Process Equipment, Inc. stands on and reiterates the points it made in its motion to dismiss.  It submits this reply brief only to address a few limited issues raised by Plaintiff Maurice White's opposition brief:

1.      **<u>Laura Siminoff Email Chain</u>**: The Amended Complaint alleged that Plaintiff engaged in email correspondence with Veeco's Human Resources department about a Muslim prayer room.  (Am. Compl. ¶¶ 31-33.)  Accordingly, Veeco attached an email chain between Plaintiff and Human Resources (Laura Siminoff) about a Muslim prayer room, assuming that this was what Plaintiff intended to incorporate by reference.  That email flatly contradicted Plaintiff's factual allegations.  Whereas Plaintiff alleged that Human Resources was non-responsive to his inquiries about a Muslim prayer room, forcing him to pray in the parking lot, the Siminoff email chain confirmed that—not only did Veeco already have a Muslim prayer room—but Plaintiff used it, and the "issue has been resolved."  (*See* Oslick Decl. Ex. 1.)

In his opposition papers, Plaintiff argues that he did not "reference[]" this correspondence with Human Resources, but some other correspondence with Human Resources.  (Pl. Opp. at 5-7.)  Thus, he asks that the Court disregard the Siminoff email chain, and instead credit his demonstrably false allegation that he "asked Human Resources if there could be an area designated for prayer, but he received no response."  (*Id.* at 7.)  Yet the incorporation by reference doctrine exists precisely so a plaintiff cannot "selectively quote" material to support a claim, while ignoring the material's full contents and context.  *See Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641 (E.D. Pa. 2026).  Here, the full content and context of Plaintiff's correspondence with Human Resources refutes his allegations.

If Plaintiff did not truly intend to reference the Siminoff email chain, and the Siminoff chain is not deemed a part of the correspondence he incorporated by reference, that only

exemplifies why his pleading is too vague to state a plausible claim.  That said, if the Court, for purposes of Veeco's motion, disregards the Siminoff email chain and instead credits Plaintiff's unquestionably false allegation, he still does not plead a claim.  As Veeco's opening brief noted, at best, Plaintiff would have alleged *inaction* from Human Resources in response to a single request.  That does not make it "one iota more likely" that Veeco ended Plaintiff's assignment for a discriminatory reason.  *Bonna v. Scranton Quincy Hosp. Co.*, 2024 WL 3605957, at *3 (M.D. Pa. 2024).  Indeed, Plaintiff does not cite a single case – from anywhere – which found that such paltry allegations suffice to plead a discrimination claim under any theory.

Further, even if the Court chooses to ignore this chain for purposes of Veeco's motion to dismiss, the Court can still consider it "for the limited purpose" of whether to grant "leave to amend." *Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*, 2022 WL 683084, at *10 (D.N.J. 2022).  And, while Plaintiff's request for leave to amend should be denied as futile in any event (*see infra* at 7), the Siminoff email chain further confirms the futility of his claims.  Plaintiff cannot be permitted to replead discrimination claims predicated on false factual allegations.

2.  **Remaining Disparate Treatment Allegations**: Plaintiff's remaining discrimination allegations are just as insufficient at pleading a plausible claim as his allegations about a Muslim prayer room.

Plaintiff argues that, by complaining about the discrimination and harassment that he allegedly faced as a Muslim, he informed Veeco that he was Muslim, and that this shows that the decision to end his assignment was discriminatory.  (*See* Pl. Opp. at 7.)  Wrong.  The mere fact that Veeco knew of Plaintiff's religion does not make it plausible that Veeco ended Plaintiff's assignment *because* of his religion.  Indeed, the law could not be otherwise – or practically *every* plaintiff could survive a Rule 12(b)(6) motion to dismiss merely by proffering that their

2

employer knew their race, sex, national origin, or religion.  *See generally See e.g.*, *id*; *Bility v. Univ. of Pittsburgh*, 2024 WL 1156625, at \*7 (W.D. Pa. 2024) (plaintiff did not plead facts "sufficient to raise any inference of discrimination" because he "d[id] not plead any facts to connect his race . . . to the University's tenure decision in his case"); *Harvey v. Technimark Healthcare, LLC*, 2024 WL 1013969, at \*3 (W.D. Pa. 2024) (dismissing claims where plaintiff "does not allege any facts sufficient to establish that a causal connection exists between his age or race" and challenged employment decisions).

Plaintiff also appears to argue that he can show discriminatory animus because one unspecified co-worker made a comment about his prostration mark, and another unspecified co-worker made a comment about how he was told by yet another unspecified employee that praying in the parking lot was a not a "good look" for the company.  (Pl. Opp. at 7.)  But, as Veeco argued, and Plaintiff does not dispute, "stray remarks by non-decisionmakers" are not sufficient to state a discrimination claim.  (*See* Veeco Br. at 5-6, citing cases).

Put simply, Plaintiff pleads no facts to render it plausible that Veeco ended his assignment due to his Muslim faith.  Thus, his Title VII and PHRA discrimination claims must be dismissed.

**3.** **<u>"Harassment" Allegations</u>**:  In opposing Veeco's motion to dismiss, Plaintiff appears to lean into a hostile work environment theory, contending that he pled a claim based on "harassment."  (Pl. Opp. at 7.)  Any such argument should be rejected, for two reasons.

*First*, Plaintiff did not plead a hostile work environment claim, and "cannot amend his pleadings through a brief in opposition to a motion to dismiss." *Andrews v. Talutto*, 2024 WL 4820372, at \*5 n.50 (M.D. Pa. 2024).  Indeed, the phrase "hostile work environment" appears nowhere in the Amended Complaint.  And the word "harassment" appears nowhere in his discrimination causes of action, Counts I and III.  (*See* Am. Compl. ¶¶ 78-83, 90-93.)  Yet hostile

3

work environment is a "distinct cause[] of action under Title VII." *Webb v. City of Philadelphia*, 2007 WL 1866763, at *7 (E.D. Pa. 2007), *aff'd*, 562 F.3d 256 (3d Cir. 2009); *Tschumy v. Rumsfeld*, 2007 WL 9770238, at *5 n.8 (M.D. Pa. 2007) ("hostile work environment" and "disparate treatment" are "unquestionably two separate and distinct claims").  To the extent Plaintiff suggests that a hostile work environment claim is somehow hidden within the rubric of "discrimination," the Amended Complaint is an impermissible "shotgun pleading" because it "fails to separate each cause of action or claim for relief into its own distinct count." *Tucker v. The Arc, Inc.*, 2026 WL 622423, at *6 (D.N.J. 2026) (cleaned up).  As such, it fails to give Veeco "adequate notice of the claims" against it, and must be dismissed on that basis.  *Id.* (cleaned up).

*Second*, even if the Court excused those procedural infirmities, any hostile work environment claim would fail on the merits.  To establish a Title VII or PHRA claim based on a hostile work environment, a plaintiff must, among other things, plead facts establishing that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (cleaned up); *Bassett v. Pennsylvania Dep't of Corr.*, 2025 WL 2656065, at *4 (M.D. Pa. 2025) (quoting *Morgan*); *Shinn v. Pennsylvania Sch. Boards Ass'n*, 2025 WL 1839494, at *8 (M.D. Pa. 2025) (same).  To satisfy this standard, the "conduct must be extreme" thus, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) are inadequate." *Bassett*, 2025 WL 2656065, at *4 (cleaned up); *Shinn*, 2025 WL 1839494, at *8 (variety of scattered incidents, such as typing out the word "boobs" on a calculator were insufficient).  Plaintiff's allegations, such as a single unspecified co-worker making a single comment about Plaintiff's prostration mark, come nowhere close to this standard – requiring dismissal.

4

4.      **Retaliation Claim**: Turning to his retaliation claim, Plaintiff argues that he sufficiently stated a claim based upon temporal proximity.  He tacitly acknowledges that his original complaint to Human Resources on December 5, more than three weeks before his assignment ended, is too far removed to support a retaliatory inference—quoting caselaw for the proposition that temporal proximity "typically" requires the relevant events to be "linked by a time span of mere days, as opposed to weeks."  (Pl. Opp. at 10, quoting *Daniels v. Commonwealth*, 2015 WL 6703278, at *5 (M.D. Pa. 2015).)  But he argues he made another complaint to his supervisor, Joe Dacri, on December 17, and posits that this complaint was close enough to ending his assignment to permit his retaliation claim to go forward.  (Pl. Opp. at 9-10.)

Plaintiff is mistaken.  "[T]emporal proximity is measured from the date on which the plaintiff first files a complaint." *Lawson v. Clark*, 2023 WL 2051149, at *3 (E.D. Pa. 2023) (calculating temporal proximity based on the original complaint, not the "extensive complaints" which followed); *Farkas v. NRA Grp. LLC*, 2016 WL 3997432, at *3, *10 (M.D. Pa. 2016) ("Temporal proximity is measured from the date on which the employee first engaged in protected activity," measuring temporal proximity from original date of request for FMLA leave, rather than employee's subsequent report of receiving "punishment" to taking FMLA); *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("We measure temporal proximity from the date on which the litigant first files a complaint").  Indeed, if the law were otherwise, then an employer could *never* terminate an employee who made constant complaints, no matter the employee's job performance or the employer's other legitimate non-retaliatory reasons, without raising a retaliatory inference and subjecting itself to burdensome discovery.  Here, Plaintiff "first" engaged in protected activity on December 5, and his assignment ended 22 days later, on December 27.  As Plaintiff himself tacitly agrees, those events are too remote in time to

5

raise a retaliatory inference based on temporal proximity.  (Pl. Opp. at 10); *Angelis v. Phila. Hous. Auth.*, 2024 WL 643142, at \*20 (E.D. Pa. 2024) (two-week period too distant); *LeBlanc v. Hill Sch.*, 2015 WL 144135, at \*18 (E.D. Pa. 2015) (eighteen days too distant); *Mickens v. Clark*, 2025 WL 976701, at \*19 n.15 (M.D. Pa. 2025) (22 days too distant).

Plaintiff also argues that the Court should not consider that he was only a "temporary staffer," whose assignment might end with the calendar year, contending that this is a "disputed" fact. (Pl. Opp. at 10.)  He is mistaken.  The question is not whether facts are "disputed," but whether Plaintiff pled sufficient factual allegations which, if accepted as true, state a plausible claim.  Here, while Plaintiff asserted the legal conclusion that he was an "'employee' of Defendants within the meanings of the laws" (Am. Compl. ¶ 15), he never pled facts to support that his Veeco "employment" was permanent or indefinite.  Quite the contrary—Plaintiff pled that: (a) Solomon Page was a "staffing agency"; (b) Solomon Page "recruited" him to "work at Veeco"; (c) he worked at Veeco "through Solomon Page"; (d) "his payroll and benefits were through Solomon Page"; and (e) the "terms and conditions of [his] employment at Veeco were provided to him by Solomon Page."  (*Id.* ¶¶ 18-21.)  Those factual allegations do not describe permanent or indefinite Veeco employment.  They describe an arrangement whereby a "staffing agency" (Solomon Page) assigns a staffer to work for a client (Veeco) for a temporary period of time.  And Plaintiff alleges no factual allegations to the contrary.

Accordingly, as Veeco's opening brief explained, in considering the "plausibility" of Plaintiff's claims, the Court can and should consider allegations that raise a *non-retaliatory* inference, including his assignment's temporary nature, and the pled facts regarding Plaintiff's absences.  (*See* Veeco Br. at 10-11.)  His retaliation claim fails for that additional reason.

6

5.      **Proposed Leave to Amend**: Finally, Plaintiff argues that, if his claims are dismissed, he should be granted leave to amend.  The Court should reject this request.  Plaintiff already amended once, after the parties conferred because Defendants believed the original Complaint was deficient. (*See* ECF #13 ¶ 1.)  That conferral led to Plaintiff's Amended Complaint, which added little additional material, and failed to cure the original Complaint's deficiencies.  (*Id.* ¶ 2; *Compare* Compl. to Am. Compl.)  Further, Plaintiff neither attaches a proposed Second Amended Complaint to his opposition papers, nor identifies the supplemental facts he would plead if permitted to amend.  Justice does not require giving Plaintiff leave to unnecessarily prolong this case, where there is no indication that Plaintiff could set forth non-futile claims.  *Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 168 (3d Cir. 2013) (affirming denial of leave to amend where "there is no indication that additional factual support could raise Woodend's claims above speculation or conclusion"); *Baker v. Hartford Underwriters Ins*. Co., 490 F. App'x 467, 470 (3d Cir. 2012) (affirming denial of leave of amend where party "failed to offer any facts which, if pled, would have cured the defects in his complaint").

### Conclusion

For the above reasons, and as set forth in Veeco's opening brief, the Amended Complaint should be dismissed with prejudice, and with leave to amend denied.

Dated: May 28, 2026                         Respectfully submitted,

By:   */s/ Jacob Oslick*
      Jacob Oslick
      SEYFARTH SHAW LLP
      20 Eighth Avenue
      New York, New York 10018
      Telephone: (212) 218-5500
      Fax: (212) 218-5526
      joslick@seyfarth.com

      *Attorneys for Veeco Process Equipment Inc.*

7

326117351v.2

## **CERTIFICATE OF SERVICE**

I, Jacob Oslick, Esq., hereby certify that on May 28, 2026, I caused a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS to be served upon all counsel of record via the Court's ECF system.


/s/ Jacob Oslick
Jacob Oslick

8

326117351v.2