IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE WHITE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 2:25-cv-06403-MRP |
| VEECO PRECISION SURFACING, LLC, | : | |
| and SOLOMON PAGE TEMPORARY | : | |
| STAFFING AGENCY, | : | |
| | : | |
| Defendants. | : | |

Perez, J.                                                                July 9, 2026

## MEMORANDUM

Plaintiff Maurice White alleges he experienced religious discrimination and retaliation in the workplace where he was temporarily employed. He sued his former temporary employer, Veeco Process Equipment, Inc. ("Veeco"), and the staffing agency which placed him there, Solomon Page Temporary Staffing Agency ("Solomon Page"), for violations of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). Before the Court is Solomon Page's motion to dismiss. Although Mr. White alleges sufficient facts to show Solomon Page was his employer, he does not allege Solomon Page had any knowledge of Mr. White's religion or protected activity or of the alleged discrimination committed by Veeco employees at Veeco. Accordingly, and for the reasons discussed below, Solomon Page's motion is granted.

1

## I.    FACTUAL BACKGROUND[1]

In June 2022, Solomon Page, a staffing agency, recruited Plaintiff Maurice White to work at Veeco in Horsham, Pennsylvania. Am. Compl., ECF No. 15 ¶¶ 18–19. Although Mr. White worked at Veeco and was supervised by Veeco personnel, his payroll and benefits were handled through Solomon Page, and his placement at Veeco was through Solomon Page. *Id.* ¶¶ 19–20.

Mr. White is a Muslim man who openly identified as Muslim and practiced his faith in the workplace. *Id.* ¶ 40. Mr. White alleges that, during his employment at Veeco, he experienced discrimination and harassment because of his Muslim faith. *Id.* ¶ 23. On December 5, 2022, Mr. White submitted a written complaint to Veeco Human Resources Business Partner, Ms. Teresa Smith Lee, after a coworker made fun of the prostration mark[2] on his forehead. *Id.* ¶ 40. The coworker asked Mr. White if the mark was for Ash Wednesday, a Christian holiday that takes place in the Spring, despite it being a Monday in December (hence, clearly not associated with Ash Wednesday). *Id.* ¶ 26. Ms. Smith Lee investigated Mr. White's complaint and concluded that the allegation was unsubstantiated. *Id.* ¶ 41. Mr. White also asked Ms. Smith Lee about the availability of a prayer space at Veeco but received no response. *Id.* ¶¶ 31–34. He thereafter had to pray in his car in the parking lot. *Id.* ¶ 34. Mr. White heard other Muslim employees had been prohibited from praying in the parking lot and felt they were being singled out at Veeco because they were Muslim. *Id.* ¶¶ 35–37.

---

[1] For purposes of these motions, the Court accepts the well-pleaded facts in the Amended Complaint, ECF No. 15, as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (holding that on a Rule 12(b)(6) motion, courts separate legal conclusions from factual allegations, then "assume all of the complaint's well-pleaded facts are true" and determine whether they plausibly give rise to relief).

[2] A prostration mark is a mark that may appear from repeated contact between the forehead and a prayer mat during Muslim prayer.

Mr. White alleges he began experiencing retaliation immediately after he complained to Veeco Human Resources. *Id*. ¶ 42. He had no attendance or performance issues before his complaints. *Id*. ¶¶ 43, 68–69. However, on December 16, 2022, Mr. White was told there was an issue with certain material he had been responsible for stocking with another non-Muslim employee. *Id*. ¶¶ 46, 51. The next day, Mr. White contacted his supervisor and explained that he believed the criticism was the product of his complaint to Human Resources. *Id*. ¶ 47. His supervisor confirmed that Mr. White had not done anything wrong and that the stocking error had been the result of a miscommunication. *Id*. ¶¶ 48–49. The other non-Muslim employee involved in the same material-handling issue was not criticized in the same way. *Id*. ¶ 51.

On December 19, 2022, Mr. White told his supervisor that he could not come to work because he was ill. *Id*. ¶ 51. The next day, he informed his supervisor that he would be unable to report to work for the rest of the week. *Id*. ¶ 53. When Mr. White returned to work on December 27, 2022, his supervisor and Ms. Smith Lee called him into a meeting. *Id*. ¶¶ 57–59. During that meeting, Veeco terminated Mr. White's employment. *Id*. ¶ 60. Veeco told him he was being terminated because he had called out the prior week and had failed to perform his job properly. *Id*. ¶ 64.

Following his termination, Mr. White sought further employment with Solomon Page, but Solomon Page did not contact Mr. White about any other assignments. *Id*. ¶¶ 71–72.

## II.     PROCEDURAL HISTORY

Plaintiff filed a Complaint on November 12, 2025, ECF No. 1, and an Amended Complaint on April 9, 2026, ECF No. 15, alleging violations of Title VII and the PHRA. Solomon Page

moved to dismiss the Amended Complaint on April 30, 2026. ECF No. 18. Mr. White responded on May 14, 2026. ECF No. 20.[3] Solomon Page's motion is ripe for decision.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts, accepted as true, that state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility" when the factual allegations support a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. The plausibility standard does not demand probability; however, a complaint should demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint should not be dismissed "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

At the motion to dismiss stage, a Title VII plaintiff need not establish the elements of a prima facie case. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). However, he must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a prima facie case. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citing *Phillips*, 515 F.3d at 234).

## IV.    LEGAL ANALYSIS

Courts generally analyze PHRA discrimination and retaliation claims under the same framework as Title VII claims. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999). Accordingly, the Court analyzes both together below.

---

[3] Veeco also moved to dismiss the Amended Complaint on May 7, 2026, ECF No. 19, and Mr. White opposed on May 21, 2026, ECF No. 21. The Court will address Veeco's motion separately.

### A.  Mr. White plausibly alleges that Solomon Page was his employer.

To assert a Title VII claim, a plaintiff must establish an employment relationship with the defendant. *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). The *Darden* test provides a non-exhaustive list of factors courts use to determine whether an employment relationship exists. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) (discussing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Those are:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 214 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)).

These factors serve as a framework and no one factor is decisive. *Faush*, 808 F.3d at 214 (citing *Darden*, 503 U.S. at 324). The court must weigh the factors in the aggregate. *Id.* The Third Circuit generally focuses on whether the entity paid the employees' salaries, hired and fired employees, and had control over employees' daily employment activities. *Id.* (citing *Covington*, 710 F.3d at 119).

Drawing all reasonable inferences in Plaintiff's favor, Solomon Page's control over roughly half of the relevant *Darden* factors suffices to plead joint employer status at the pleading stage. *See Covington*, 710 F.3d at 119 (finding an employment relationship where defendants controlled plaintiffs' assignments to work and directly paid the plaintiffs that they staffed). Although it was Veeco who fired Mr. White and likely controlled his daily assignments at Veeco, Solomon Page controlled Mr. White's payroll, hired him, and controlled his placement at Veeco. ECF No. 15 ¶¶ 19–21. Solomon Page also controlled Mr. White's benefits and had the power to assign him

additional employment. *See id*. ¶¶ 20, 71–72. At the pleading stage, these allegations sufficiently support a plausible employment relationship between Mr. White and Solomon Page.

### B. Mr. White does not link Solomon Page to any discrimination or retaliation.

Notwithstanding the above, Solomon Page's liability for the discrimination and retaliation by Veeco employees at Veeco does not turn only on the employer relationship between Mr. White and Solomon Page. To state a Title VII claim against a particular defendant, a plaintiff must plausibly allege that the defendant is liable as the employer—either because the defendant itself took the challenged discriminatory employment action, or because facts support treating the defendant as liable as a joint employer. *See Covington*, 710 F.3d at 119–20 (emphasizing the necessity for an employer relationship for a plaintiff to proceed on Title VII claims); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228–29 (5th Cir. 2015) (holding that joint employers can be liable for violations committed by non-employees). Mr. White fails to properly plead either theory.

### 1. The Amended Complaint does not show Solomon Page participated in the discrimination or retaliation.

Title VII discrimination may be based on disparate treatment or a failure to accommodate. To succeed on a disparate treatment claim, a plaintiff must plead facts supporting an inference of discrimination. *Shramban v. Aetna*, 262 F. Supp. 2d 531, 538 (E.D. Pa. 2003). In other words, the plaintiff must plead his protected status was a motivating or determinative factor in the challenged decision. *Connelly*, 809 F.3d at 789–90. A religious accommodation claim, meanwhile, requires facts showing the plaintiff held a sincere religious belief that conflicted with a job requirement, he informed the employer of the conflict, and he was disciplined for failing to comply with the conflicting requirement. *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017).

Nowhere does Mr. White allege Solomon Page even knew of his religion, let alone his need for religious accommodations. Nor does Mr. White allege Solomon Page acted discriminatorily toward him, knew of any of the discriminatory conduct, prevented him from engaging in protected activity, or failed to participate in any requested accommodation practice. The alleged comments, investigation, failure to respond to his prayer space inquiry, criticism of his work, and termination all involved only Veeco personnel. The only allegations specific to Solomon Page are that it recruited Mr. White, placed him at Veeco, and handled payroll and benefits. Mr. White has failed to allege any facts connecting Solomon Page to either the challenged decision or to knowledge of Mr. White's protected activity, so his discrimination claim against Solomon Page fails under a theory of direct discrimination.

### 2.  Mr. White does not plausibly allege Solomon Page retaliated against him.

Similarly, retaliation claims require a causal connection between the employer's challenged retaliatory behavior and the employee's protected activity. *See* U.S. Equal Employment Opportunity Commission, *EEOC Enforcement Guidance on Retaliation and Related Issues*, No. 915.004 (Aug. 25, 2016), https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues ("EEOC Retaliation Guidance"); *see also Connelly*, 809 F.3d at 789 (holding that to survive a motion to dismiss, a Title VII retaliation complaint must plead facts supporting a causal link between plaintiff's protected conduct and employer's adverse action). A causal connection cannot be established when an employer is not aware of the plaintiff's protected activity. *EEOC Retaliation Guidance* at "Employer Unaware of Protected Activity."

Plaintiff only alleges that his complaints and requests for accommodation were submitted to Veeco. The Amended Complaint lacks facts suggesting Solomon Page had any awareness of this or any other protected activity. Mr. White, therefore, fails to allege Solomon Page directly engaged in retaliation against him.

### 3.  Solomon Page is not liable for Veeco's conduct as a joint employer.

Even without directly participating in the discrimination, Solomon Page could be liable for Title VII violations that occurred at Veeco under a joint employer theory of liability. When two entities could be considered the plaintiff's employer, both may be liable for discrimination as "joint employers" for Title VII violations that occur at either workplace. *Graves v. Cnty. of Dauphin*, 98 F. Supp. 2d 613, 620 (M.D. Pa. 2000). However, joint employer status does not mean Solomon Page is automatically liable for every discriminatory or retaliatory act committed by Veeco employees. The Third Circuit has yet to rule on the extent to which a joint employer may be liable for Title VII violations committed by non-employees under a joint employer theory. Other circuits, however, have limited such liability to situations where the joint employer participated in the discrimination, or where it knew or should have known about the other employer's discriminatory conduct and failed to take corrective measures within its control. *See, e.g.*, *Burton*, 798 F.3d at 229.

The Fifth Circuit has held that a joint employer staffing agency is liable for the discriminatory conduct of its joint employer client if it knows or should have known of the client's discrimination but fails to take corrective measures within its control. *Burton*, 798 F.3d at 229. The First, Ninth, and Seventh Circuits have applied the same standard. *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 41 n.6 (1st Cir. 2007); *U.S. Equal Employment Opportunity Commission v. Global Horizons, Inc.*, 915 F.3d 631, 641 (9th Cir. 2019) ("Liability may be imposed for a co-employer's discriminatory conduct only if the defendant employer knew or should have known about the other employer's conduct and failed to undertake prompt corrective measures within its control." (cleaned up)); *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 812 (7th Cir. 2014) (finding a temporary employment agency could be liable for Title VII violations committed by a

client joint employer when the temporary agency knew or should have known of the violations).[4] Such knowledge is required because "joint employer liability does not by itself implicate vicarious liability. . . . Thus, a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their *own* actions, not for each other's actions." *Torres-Negron*, 488 F.3d at 41 n.6.

This Court is persuaded by the reasoning of these Circuits and by EEOC guidance regarding staffing firms' Title VII obligations to temporary workers they placed. According to the EEOC, "[s]taffing firms may assume that they are not responsible for any discrimination . . . that their workers confront at the clients' work sites." U.S. Equal Employment Opportunity Commission, *EEOC Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, No. 915.002 (Dec. 3, 1997), https://www.eeoc.gov/laws/guidance/enforcement-guidance-application-eeo-laws-contingent-workers-placed-temporary. Joint employer liability is intended to ensure that temporary workers

---

[4] Some lower courts in this Circuit have held that at the pleading stage, a Title VII complaint premised on joint employer liability may succeed even where a plaintiff has not alleged that the joint employer knew of the violations. See *Scarborough v. TL Transp., LLC.*, No. 19-2792, 2020 WL 13787676, at *1, n.2 (E.D. Pa. Jan. 8, 2020) (denying dismissal because "[d]efendants have not cited, nor has the Court located, any authority from this Circuit requiring an employment discrimination plaintiff to separately allege the conduct and knowledge of joint employers in order to withstand a motion to dismiss"); *see also Rippy v. Phila. Dep't of Pub. Health*, No. 19-1839, 2019 WL 4849439, at *5 (E.D. Pa. Sept. 30, 2019) (denying dismissal "even where there is a thin factual record," because "plaintiff alleges some facts satisfying joint employer theory factors," including that supervisors from both employers jointly shared employee discipline commission and employees were required to report issues to supervisors for both employers). However, not all have followed that approach, particularly where there are no allegations of knowledge on the part of the joint employer who did not participate in the discrimination. *See Reid v. Exelon Corp.*, No. 17-4043, 2018 WL 2441744, at *4 (D.N.J. May 31, 2018) (dismissing claim against Exelon because the complaint lacked facts establishing Exelon was joint employer and because the complaint lacked any indication "that Exelon had even an inkling of what was going on in the other companies"). Furthermore, case law outside this circuit suggests that "dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to allege that a staffing agency participated in the discrimination or knew or should have known about it." *West v. ABM Indus.*, No. 3:19-cv-02822-X-BT, 2020 WL 5752935, at *3 (N.D. Tex. Aug. 17, 2020); *see also, e.g.*, *High v. City of Wylie, Texas*, No. 4:18-CV-364, 2019 WL 3557238, at *5 (E.D. Tex. Aug. 5, 2019) (dismissing claims where the plaintiff alleged "no factual allegations that [the staffing agency] participated in the alleged discrimination or knew or should have known about the alleged discrimination").

9

do not fall through gaps in Title VII's protections, not to impose automatic liability on a joint employer that had no notice of the alleged misconduct. *See id*. at "Discrimination at Work Site"; *see also Torres-Negron*, 488 F.3d at 41 n.6.

Additionally, the Third Circuit maintains that plaintiffs are not entitled to a "fishing expedition" during discovery to support a speculative pleading. *See Zuk v. Eastern Pa. Psychiatric Inst. of the Medical College*, 103 F.3d 294, 299 (3d Cir. 1996) (affirming motion to dismiss because the plaintiff failed to provide any factual basis for his complaint despite the plaintiff's contention that discovery would produce information to support his claim). Plaintiff "must have some basis in fact for the action" to indicate that further information would be obtained during discovery. *Id*.

Here, Mr. White's claims do not meet the "knew" or "should have known" standard. Mr. White does not allege Solomon Page knew of the discrimination or retaliation by Veeco employees or that Solomon Page was on notice of the possibility of such Title VII or PHRA violations. Nor does he allege Solomon Page or its employees personally engaged in any discrimination or retaliation. Mr. White has, therefore, failed to plead facts that would trigger joint employer liability.

## V.       CONCLUSION

For the foregoing reasons, the Court grants Solomon Page's motion to dismiss. Although Mr. White plausibly alleges that Solomon Page could be considered his joint employer, there are no facts establishing Solomon Page's knowledge of the discrimination or Mr. White's protected activity. Nor does the Complaint show Solomon Page took any adverse action against Mr. White or even knew of Mr. White's religion such that discriminatory intent could be inferred. However, the Court cannot determine at this stage whether amendment would be futile, so dismissal is without prejudice. *See Phillips*, 515 F.3d at 245–46.

An appropriate Order follows.

10